Case No. 17-20581-CIV-GAYLES/OTAZO-REYES

FOREMOST SIGNATURE INSURANCE
COMPANY,

      Plaintiff,

v.

SILVERBOYS, LLC, SOJO DESIGN, LLC,
SOFIA JOELSSON,
XAVIER COE a/k/a CHAYANNE COE,
and ROBERT WHITTINGHAM,

      Defendants.

_____/

## ORDER

**THIS CAUSE** comes before the Court upon Defendants SoJo Design, LLC, Sofia Joelsson, and Xavier Coe a/k/a Chayanne Coe's Motion for Summary Judgment on Foremost's Duty to Defend ("Defendants' Motion") [ECF No. 65] and Plaintiff Foremost Signature Insurance Company's Motion for Summary Judgment ("Plaintiff's Motion") [ECF No. 66].  The Court has reviewed the Motions and the record and is otherwise fully advised.  For the reasons set forth below, Defendants' Motion is **DENIED** and Plaintiff's Motion is **GRANTED**.

## BACKGROUND

### I.  The Underlying Complaint

On July 12, 2016, Silverboys, LLC (the "Owner") filed an action against Defendants SoJo Design, LLC ("Designer"), Sofia Joelsson ("Joelsson"), Xavier Coe ("Coe"), and Robert Whittingham ("Whittingham") (collectively, the "Defendants") in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida, setting forth a myriad of breach of contract,

fraud, conversion, and negligence claims (the "Underlying Complaint"). [ECF No. 1-1]. According

to the Underlying Complaint, on November 25, 2014, Designer,[1] a Miami-Based design company,

entered into a contract with Owner whereby Designer agreed to provide interior design services to

Owner in conjunction with the renovation of Owner's vacation home in the Bahamas (the "Design

Contract"). [ECF No. 1-1]. On January 26, 2015, Designer, with Owner's consent, retained

Whittingham, a Bahamian architect residing in the Bahamas, as a subcontractor to serve as project

manager on the project (the "Independent Contractor Agreement"). [Underlying Compl., Ex. C, ECF

No. 1-1]. Pursuant to the Independent Contractor Agreement, Whittingham was an independent

contractor and could not "look to [Designer] as his/her employer, or as a partner, agent or principal."

*Id.* at ¶ 1.2.

The Underlying Complaint is replete with allegations of Defendants' intentional misconduct.

Owner asserts that one or more of the Defendants lied about their qualifications and the progress of

the Project, submitted false invoices, requested money for services that were not performed,

intentionally delayed the project to accrue fees, and misused funds in activities "resemb[ing] a Ponzi

scheme." [Underlying Compl. ¶ 57, ECF No. 1-1]. The Underlying Complaint contains additional

allegations that may or may not be intentional conduct, including that the Defendants failed to order

certain furnishings, failed to supervise workers, and performed substandard work. As a result of the

Defendants' intentional and negligent conduct, Owner alleges that its damages include (a) the cost to

repair substandard work; (b) loss of use of the home due to delay; and (c) overcharges for

furnishings, contract fees, and expenses. While the Underlying Complaint details how the

Defendants' intentional and often fraudulent misconduct caused significant delays, it sets forth only a

few instances of physical injury to the home, including mold on the ceiling in the master shower,

---

1    Defendant Joelsson was the principal owner of Designer and Coe was the head of Designer's business

faulty millwork on the children's playroom bookshelf, and a defective front door and resysta façade. [Underlying Complaint ¶¶ 17, 60(n), 64, ECF No. 1-1]. After terminating Whittingham and Designer, Owner filed the Underlying Complaint against Defendants asserting claims for (1) breach of contract (against Designer); (2) professional negligence (against Designer); (3) conversion (against Designer); (4) negligence (against Joelsson); (5) fraud in the inducement (against Designer and Joelsson); (6) fraudulent misrepresentation (against Designer and Joelsson); (7) negligent misrepresentation (against Designer and Joelsson); (8) fraudulent misrepresentation (against Coe); (9) negligent misrepresentation (against Coe); (10) breach of contract (against Whittingham); and (11) negligence (against Whittingham).

## II. The Policies

During the relevant time period, Designer had three commercial general liability insurance ("CGL") policies (the "Policies") with Plaintiff Foremost Signature Insurance Company ("Foremost"). The relevant provisions provide coverage for "bodily injury" or "property damage" that is caused by an "occurrence" that takes place in the "coverage territory" during the policy period.

## III.  The Current Action

On February 25, 2017, Foremost brought this action, pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201, seeking a declaration that the Policies do not cover Owner's claims against Defendants and that, therefore, Foremost has no duty to defend or indemnify Defendants in the Underlying Action [ECF No. 1].[2] On April 26, 2017, SoJo moved to dismiss arguing, in part, that Foremost's request for declaratory relief is premature. The Court stayed the matter as to Foremost's claim on the duty to indemnify, but allowed the declaratory relief claims

---

development and accounting. [ECF No. 1-1].
2.        Foremost is defending Defendants in the Underlying Action under a reservation of rights.

relating to Foremost's duty to defend to proceed. The parties have each moved for summary judgment.

## **LEGAL STANDARD**

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no ***genuine*** issue of ***material*** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). "Where the material facts are undisputed and all that remains are questions of law, summary judgment may be granted." *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1138 (11th Cir. 2016). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

## ANALYSIS

### I. Foremost Has No Duty to Defend

Foremost contends that it has no duty to defend Defendants because the Underlying Complaint does not allege "property damage" caused by an "occurrence" that took place in the "coverage territory." To make this determination, the Court looks only to the allegations in the Underlying Complaint and the terms of the Policy. *See Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442–43 (Fla. 2005). If the allegations in the Underlying Complaint do not establish coverage, there is no duty to defend. *James River Ins. Co. v. Bodywell Nutrition, LLC*, 842 F. Supp. 2d 1351, 1354 (S.D. Fla. 2012) (citing *Posigian v. Am. Reliance Ins. Co. of New Jersey*, 549 So. 2d 751, 753 (Fla. 3d DCA 1989)). Unsupported and conclusory "buzz words" are insufficient to trigger coverage. *State Farm Fire & Cas. Co. v. Setinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004). In addition, inferences are insufficient to trigger coverage. *Fun Spree Vacations, Inc. v. Orion Ins. Co.,* 659 So. 2d 419, 421-22 (Fla. 3d DCA 1995) ("[T]he allegations in the complaint control in determining the insurer's duty to defend . . . inferences are not sufficient.") (citations omitted).

"[T]he duty to defend is of greater breadth than the insurer's duty to indemnify, and the insurer must defend even if the allegations in the complaint are factually incorrect or meritless. . . . Any doubts regarding the duty to defend must be resolved in favor of the insured." *Jones*, 908 So. 2d at 442-43. "Florida law provides that when at least some of the claims are covered, the insurer has a duty to defend the entire suit." *Century Surety Co. v. Southern Coatings, Inc.*, No. 06-61880, 2007 WL 9701080, at *3 (S.D. Fla. December 26, 2007). Where there is no duty to defend, there is no duty to indemnify. *See E.S.Y., Inc. v. Scottsdale Ins. Co.*, No. 15-21349-CIV, 2015 WL 6164666, at *6 (S.D. Fla. October 14, 2015) (citing *Farrer v. U.S. Fid. & Guar. Co.*, 809 So. 2d 85, 88 (Fla. 4th DCA 2002)).

Under Florida law, "[i]nsurance contracts are construed according to their plain meaning, with any ambiguities construed against the insurer and in favor of coverage." *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007). If there is a dispute over coverage and exclusions, the Court employs a burden-shifting framework. *See E.S.Y., Inc.*, 2015 WL 6164666, at * 6. "A person seeking to recover on an insurance policy has the burden of proving a loss from causes within the terms of the policy[,] and if such proof of loss is made within the contract of insurance, the burden is on the insurer to establish that the loss arose from a cause that is excepted from the policy . . . ." *Id.* (quoting *U.S. Liab. Ins. Co. v. Bove*, 347 So. 2d 678, 680 (Fla. 3d DCA 1977)). If the insurer is able to establish that an exclusion applies, the burden shifts to the insured to prove an exception to the exclusion. *Id.*

## A. Property Damage and Occurrence in the Context of Commercial General Liability Policies

The Policies, like other CGL policies, define property damage as "[p]hysical injury to tangible property, including all resulting loss of use of that property . . . or . . . [l]oss of use of tangible property that is not physically injured." [Policies at Section V – Definitions, ECF Nos. 1-2, 1-3, 1-4]. The Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* The Policies do not define accident; however, under Florida law, "where the term 'accident' in a liability policy is not defined, the term, being susceptible to varying interpretations, encompasses not only 'accidental events,' but also injuries or damages neither expected nor intended from the standpoint of the insured." *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1076 (Fla. 1998). Accordingly, property damage caused by intentional conduct is not an occurrence. *See Jones Boat Yard, Inc. v. St. Paul Fire & Marine Ins. Co.,* No. 16-cv-25344, 2017 WL 5640628, at *7 (S.D. Fla. Sept. 6, 2017)

(holding that there was no "occurrence" where complaint asserted only claims for breach of contract, conversion, fraud, and fraud in the inducement).

The Underlying Complaint sets forth two categories of property damage caused, at least in part, by the Defendants' negligence. First, the Underlying Complaint alleges very few instances of damage to physical property, such as a faulty master shower enclosure, a warped bookcase, and a defective front door, caused by Defendants' negligent supervision and/or craftsmanship. Under Florida law, "the term 'property damage' does not include an insured's faulty workmanship, but it does include physical injury to otherwise nondefective property that results from faulty workmanship . . . . Damage to otherwise nondefective property that is caused by faulty workmanship constitutes an 'occurrence,' so long as the faulty workmanship was unintentional." *Addison Ins. Co. v. 4000 Island Blvd.*, 721 F. App'x 847, 854 (11th Cir. 2017) (citing *J.S.U.B., Inc.*, 979 So. 2d at 888-89). Therefore, the bookcase and shower enclosure—defective due to Defendants' faulty workmanship— would not be covered property damage. However, the allegations regarding the mold in the shower and the damaged resysta façade—injuries to otherwise nondefective property caused by Defendants' failure to properly perform their job—could be read to fall within the definition of covered property damage under the Policies, so long as the Defendants' failures were not intentional. *Id.*

In addition to the alleged damage to tangible property, the Underlying Complaint's primary source of "property damage" is the purported loss of use of the home due to delay. While the policy does provide for loss of use of tangible property that is not physically injured, that loss of use must have a causal link to the alleged unintentional misconduct. *See Auto-Owners Ins. Co. v. Ralph Gage Contracting, Inc.*, 685 F. App'x 820, 822 (11th Cir. 2017) (holding that a CGL policy required "unambiguously a causal link between the alleged 'property damage' and an 'occurrence'"). Nearly all of the Underlying Complaint's allegations of loss of use are linked to the Defendants' intentional

misconduct, including Whittingham's intentional delay of the project to incur more fees. This loss of use would not be covered "property damage" under the Policy. However, the Underlying Complaint can be read to show a link between Designer's negligence, particularly in its supervision of Whittingham and others, and the loss of use of the home. For example, the Underlying Complaint alleges that "[a]fter Owner terminated Whittingham, Joelsson herself realized the gross delay and negligence Designer had caused by her oversight, negligence, and mismanagement . . . ." [Underlying Compl. ¶ 78, ECF No. 1-1]. As a result, the Court finds that, in the context of a duty to defend, the Underlying Complaint sufficiently alleges property damage caused by an occurrence. However, as set forth below, there is no duty to defend because any alleged property damage was not caused by an occurrence *in the coverage territory.*

## B.     Coverage Territory

For the duty to defend to be triggered, the Underlying Complaint must also allege that the property damage was caused by an occurrence "in the coverage territory." The Policies' coverage territory includes: ". . . [t]he United States of America . . . or [a]ll parts of the world if . . . the . . . damage arises out of . . . [g]oods or products made or sold by [SoJo] in the [United States]; or . . . [t]he activities of a person whose home is in the [United States], but is away for a short time on your business." [Policies, ECF Nos. 1-2, 1-3, 1-4].

Foremost argues it has no duty to defend the Defendants because any alleged property damage was caused by an occurrence in the Bahamas—outside of the coverage territory. Defendants argue that the alleged negligent conduct that caused the damage occurred in the coverage territory since Designer failed to supervise Whittingham, made billing mistakes, and drafted the designs in Miami. This issue was addressed directly in *Auto-Owners Ins. Co. v. Globe International,* No. 3:14cv150, 2015 WL 11110847, at *5-6 (N.D. Fla. Sep. 26, 2015). There, the underlying

8

complaint alleged that the insured was negligent in failing to perform background checks on employees who sexually abused children at a home in Haiti. The bulk of the alleged negligent hiring/supervision occurred at the insured's offices in Pensacola, Florida. The damage – in that case bodily injury—occurred in Haiti. The policy's coverage territory was identical to the one in this action. The court, relying on the "cause theory" set forth by the Florida Supreme Court in *Koikos v. Travelers Insurance Co.*, held that when the insured is being sued for negligence, an occurrence "'is defined by the immediate injury-producing act and not by the underlying tortious omission.'" *Globe*, 2015 WL 11110847, at *5 (quoting *Koikos v. Travelers Ins. Co.*, 849 So. 2d 263, 271 (Fla. 2003)). As a result, the court held that the occurrence that caused the injury was not the insured's negligence in Florida, but rather, the sexual abuse in Haiti. *Id.; see also CACI Int'l, Inc. v. St. Paul Fire and Marine Ins. Co.,* 566 F.3d 150, 156-57 (4th Cir. 2009) ("[T]he great weight of case law holds that it is the location of the injuries—not of some precipitating cause—that determines the location of the event for purposes of coverage."). The location of the alleged property damage in this action is in the Bahamas, outside of the coverage territory.

Even so, Defendants contend that the Policies' coverage area extends to all parts of the world if the damages arise from activities of a person whose home is in the United States, but is away for a short time on the insured's business and that the Miami-based Defendants travelled to the Bahamas to perform their work under the Design Contract. In *Globe,* the underlying complaint alleged that the abusers maintained homes in the United States but travelled to Haiti "for short periods of time." *Globe*, 2015 WL 11110847, at *5. Based on these allegations, the court found that some of the claims occurred within the expanded definition of coverage territory. *Id.* There are no such allegations in this action. According to the Underlying Complaint, Joelsson and Coe reside in Miami and the meetings between Designer and Whittingham occurred in Miami. Indeed, there are no

allegations in the Underlying Complaint that Joelsson, Coe, or any other Designer employee travelled to the Bahamas for a short or long period of time and the Court cannot infer otherwise. *See Fun Spree Vacations, Inc.,* 659 So. 2d at 421-22 ("[T]he allegations in the complaint control in determining the insurer's duty to defend . . . inferences are not sufficient."). As a result, even under the more expansive definition, there was no property damage caused by an occurrence in the coverage area. Therefore, the Underlying Complaint did not trigger a duty to defend.[3]

## C. Duty to Indemnify

The Court finds that Foremost has no duty to defend any of the Defendants in the underlying litigation. As a result, the Court also finds that Foremost has no duty to indemnify the Defendants. *See Burlington Ins. Co. v. Normandy Gen. Partners*, 560 F. App'x. 844, 849 (11th Cir. 2014) ("In sum, because Burlington had no duty to defend Normandy in the Appellants' action against Normandy, Burlington had no corresponding duty to indemnify.").

---

3      Because the Court finds that the allegations in the Underlying Complaint do not establish coverage, it does

## CONCLUSION

Based thereon, it is

**ORDERED AND ADJUDGED** that Defendants SoJo Design, LLC, Sofia Joelsson and Xavier Coe a/k/a Chayanne Coe's Motion for Summary Judgment on Foremost's Duty to Defend ("Defendants' Motion") [ECF No. 65] is DENIED and Plaintiff Foremost Signature Insurance Company's Motion for Summary Judgment ("Plaintiff's Motion") [ECF No. 66] is GRANTED. A final judgment shall enter under separate order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 11th day of September, 2018.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

not address any of the Policies' exclusions or whether Whittingham was a covered employee.